UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION


MARK A. SMITH,                    )
                                  )
Plaintiff,                        )
                                  )      NO. 3:08-CV-153
v.                                )
                                  )
HYDRO ALUMINUM NORTH              )
AMERICA, INC.,                    )
                                  )
Defendant.                        )


## OPINION AND ORDER

This matter is before the Court on: (1) Defendant Hydro Aluminum North America, Inc.'s Motion for Summary Judgment (DE #20); and (2) Defendant Hydro Aluminum North America, Inc.'s Motion to Strike the Affidavits of Mark A. Smith and Joshlyn Tolson (DE #27). For the reasons set forth below, the Motion to Strike is **GRANTED in PART and DENIED in part** and the Motion for Summary Judgment is **GRANTED**. Accordingly, the clerk is **ORDERED** to enter judgment in favor of Defendant and close this case.


BACKGROUND

Plaintiff, Mark A. Smith ("Smith"), filed suit against his former employer, Defendant, Hydro Aluminum North America, Inc. ("Hydro Aluminum"), alleging he was terminated in violation of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112

*et seq.*, and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.* ("Title VII"). Hydro Aluminum has filed a motion for summary judgment, claiming that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on both claims. Hydro Aluminum has also filed a motion to strike portions of two affidavits Smith attached to his response in opposition to Hydro Aluminum's motion for summary judgment.


MOTION TO STRIKE

Hydro Aluminum has filed a motion to strike portions of the affidavits of Smith and Joshlyn Tolson ("Tolson"), both of which were attached to Smith's summary judgment response brief. Hydro Aluminum seeks to strike certain statements contained in the affidavits because they contain inadmissible affidavit testimony. Unfortunately, for both the Court and Smith, Smith has failed to respond to this motion. Pursuant to Local Rule 7.1(a), Smith's failure to respond does authorize the Court to issue a "summary ruling" on the matter. *See* N.D. Ind. L.R. 7.1(a).

Federal Rule of Civil Procedure 56 states that affidavits filed in conjunction with motions for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(e)(1). On a motion for

summary judgment, a court is not to consider those parts of an affidavit that fail to comply with Rule 56(e). *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply with Rule 56(e) and should be disregarded: (1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture. *Heltzel v. Dutchmen Mfg., Inc.*, 2007 WL 4556735 *4 (N.D. Ind. Dec. 20, 2007) (citations omitted). With these principles established, the Court will consider Hydro Aluminum's arguments.

## Affidavit of Mark A. Smith

Hydro Aluminum seeks to strike a number of statements contained in Smith's Affidavit (DE #24), claiming they are inadmissible affidavit testimony.

### Paragraph 4

Smith states that in late 1999 or early 2000, he received an approved medical leave to recuperate from Reiter's Syndrome events. Subsequently, he states that he has "been a 'qualified individual with a disability' within the meaning of that term under the

provisions of the Americans With Disabilities Act."[1]  Hydro

Aluminum argues that this statement should be stricken because it

contains an impermissible legal conclusion.  The Court agrees that

an approved medical leave for Reiter's Syndrome "events" does not

automatically designate Smith as a qualified individual with a

disability under the ADA and acknowledges that the statement itself

is self-serving.  Nevertheless, Smith does present some evidence of

such a status within the record, so the claim is not wholly without

factual support.[2]  For this reason and because Smith's alleged

_____

[1] To be considered a "qualified individual with a disability" under the
ADA, a plaintiff must establish: (1) that he has a disability as defined by
the ADA; and (2) that he is qualified for the position in question.  *Hoffman
v. Caterpillar, Inc.*, 256 F.3d 568, 571-72 (7th Cir. 2001).  An individual can
prove that he is "disabled" for ADA purposes in one of three ways: (1) he has
a physical or mental impairment that substantially limits one or more major
life activities; (2) he has a record of such an impairment; or (3) he is
regarded as having such an impairment by her employer.  42 U.S.C. § 12102(2);
*Sutton v. United Air Lines*, 527 U.S. 471, 478 (1999).  An individual may
demonstrate he is "qualified" if he "'satisfies the prerequisites for the
position' and 'can perform the essential functions of the position held . . .
with or without reasonable accommodation.'"  *Hoffman*, 256 F.3d at 572 (*citing
Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996)).

[2] Smith claims he has a physical impairment that substantially limits
one or more of his major life activities, namely standing or moving without
pain.  (Smith Aff., ¶ 2.)  He describes his Reiter's Syndrome as a "condition
somewhat similar to arthritis, resulting in periodic swelling and pain in
[the] joints."  (Smith Aff., ¶ 2.)  He also describes "flare up" events during
which he states he is "substantially limited in the ability to move or stand
without pain."  (*Id.*)  For medical documentation he provides a U.S. Department
of Labor form submitted by Dr. Bulger.  (DE #1-3.)  In that form, Dr. Bulger
stated that Smith was "having a significant flare up which render[d] him very
sore and with painful joints."  (*Id.* at 1.)  Dr. Bulger indicated that it
would be necessary for Smith to work only intermittently or to work less than
a full schedule for a "probable duration" of 2-3 months.  (*Id.*)  This
documentation was submitted in August of 2006.  Smith provides a note from Dr.
Bulger dated February 27, 2007, which states, "Please allow Mark to use the
bathroom as needed due to his Reiter's Syndrome.  Thanks."  (DE #1-4.)  No
further medical documentation is provided by Smith.  Smith also states that he
was qualified for the position, and he supports this assertion by describing
various jobs held within Hydro Aluminum for a period of nine years.  (Smith
Aff., ¶ 3.)

status as a qualified individual with a disability under the ADA is not at issue for purposes of this summary judgment motion, the Court declines to strike the complained of statement. (*See* Defendant Hydro Aluminum North America, Inc.'s Reply Memorandum in Support of Motion for Summary Judgment.)[3]

Paragraph 5

Smith states "I knew that any further requests to have accommodation for my Reiter's Syndrome disability would be with the acknowledgment, by Hydro, that I was such a 'qualified individual with a disability' under the ADA." Hydro Aluminum argues that the statement should be stricken because it is mere speculation, because it is an impermissible inference not grounded in any firsthand knowledge, and because it contains an impermissible legal conclusion. Again, while the Court acknowledges the conclusory nature of the statement, Smith does set forth some evidence regarding this assertion.[4] In light of this evidence, and in light of the fact that the contention is not at issue for purposes of this summary judgment motion, the Court declines to strike the complained of statement.

---

[3] "Hydro has, for purposes of this summary judgment motion only, assumed that Smith can meet his burden of establishing a prima facie case of disability discrimination." (DE #26, p. 2.)

[4] Smith states that he knew Hydro Aluminum acknowledged his status as a "qualified individual with a disability" because his medical leaves were consistently approved, because Hydro Aluminum knew of his Reiter's Syndrome disability, and because Doug Jesch once told him that the disability "would be no problem." (Smith Aff., ¶ 5.) In this paragraph, Smith is essentially asserting that, through the actions above, Hydro Aluminum regarded him as having a disabling impairment as defined under the ADA.

<u>Paragraph 8</u>

Smith states that he "was met with particular discrimination, in violation of the ADA, in the form of refusals from my Hydro supervisors, in terms of accommodating my Reiter's Syndrome disabilities" and that another employee's comments "violat[ed] the ADA provisions requiring Hydro's accommodation of my Reiter's Syndrome disability." Hydro Aluminum argues that the statements should be stricken because they are impermissible legal conclusions. This Court agrees and the complained of statements are **STRICKEN**.

Also in paragraph 8, Smith states that as of April 10, 2007, Hydro Aluminum "had notification" that he would be absent for the week "through my statements to Isaac Hunt about my coming absences and forthcoming medical documentation to authorize those absences." Hydro Aluminum argues that the statement should be stricken because it directly contradicts Smith's sworn deposition testimony. Smith's deposition testimony in question states that he told Isaac Hunt "I'm going home. I'm calling the doctor, and I will see you probably in a few days, if not tomorrow." (Smith Dep., p. 197; DE #27, p. 7.) The Court agrees that the cited testimony does not support the conclusion that Hydro Aluminum had definitive "notification" of Smith's absences for the rest of the week. Smith himself left the door open for a return the following day. The complained of statement is **STRICKEN** to the extent it does not

accurately portray the record.

<u>Paragraph 9</u>

Smith states that "Dr. Bulger's staff person told me [a medical document] was sent by FAX to Hydro's Human Resources department on that same day of April 10, 2007." This statement is **STRICKEN** as inadmissible hearsay.

<u>Paragraph 17</u>

Smith states that Hydro Aluminum's conduct is "unauthorized by the Collective Bargaining Agreement" and that there is "only one contractually authorized sanction" in the Collective Bargaining Agreement. Hydro Aluminum contends that the entire paragraph should be stricken because it contains only conclusory allegations lacking supporting evidence and impermissible legal conclusions. The Court agrees and notes that there is no evidence that termination of seniority is the only authorized sanction.[5] In fact, the terms of the Bargaining Unit Attendance Policy (DE #20-2, pp. 6-9), which are discussed below in detail, suggest otherwise. The paragraph is **STRICKEN.**

<u>Affidavit of Joshlyn Tolson</u>

Hydro Aluminum seeks to strike a number of statements contained in Joshlyn Tolson's Affidavit (DE #25), claiming they are

---

[5] Smith does not provide the Collective Bargaining Agreement itself as evidence; only the cover sheet of the Agreement is attached to his complaint. (DE #1-6.)

inadmissible affidavit testimony.

Paragraph 2

Joshlyn Tolson ("Tolson") states that Hydro Aluminum "consistently accomodated [Smith's] Reiter's Syndrome 'flare up' events, by accepting the medical authorizations from Smith's primary treating physician, Dr. John Bulger." Hydro Aluminum argues that the statement should be stricken because it is not based on first-hand knowledge. The Court agrees that the statements are not admissible to the extent that they convey conclusions not made with personal knowledge of the affiant. As such, the complained of statements are **STRICKEN**.

Paragraph 3

Hydro Aluminum states that this paragraph should be stricken because it describes alleged conduct by Hydro Aluminum towards Smith that Tolson did not personally witness. The Court agrees that this paragraph should be **STRICKEN** as it is not based on first-hand knowledge of Tolson.

Paragraph 4

Tolson states that "Smith told me that he had telephoned Dr. Bulger to request documentation that his recurring Reiter's Syndrome condition required him to be released from work duties until a return to work date of April 18, 2007" and that "Dr. Bulger's staff person told me that the document was FAX-transmitted to Hydro's Human Resources department on that same date of April

10. 2007." Hydro Aluminum argues that the statements should be stricken as inadmissible hearsay. The Court agrees and the statements are **STRICKEN**.

Paragraph 6

Tolson states that Smith "told me that he had placed that same photocopy under the locked door of the office of Nancy A. Kovacs." Hydro Aluminum argues that this statement constitutes inadmissible hearsay and should be stricken. The Court agrees and the statement is **STRICKEN**.

MOTION FOR SUMMARY JUDGMENT

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.

*Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993).

Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

FACTS

Plaintiff, Smith, is a white male who was employed by the Defendant, Hydro Aluminum, at its aluminum product manufacturing plant ("Plant") in North Liberty, Indiana, for just under nine years, from June of 1998 thru April 16, 2007, when he was discharged. (Kovacs[6] Aff., ¶ 2; Smith Aff., ¶ 3; Comp., pp. 1-2, 6-7.) Smith held a number of different positions while working at the Plant including press operator, utility, anodizing, fab tech, fab operator, saw helper, general maintenance, and team leader. (Comp., p. 3; Smith Dep., pp. 109, 117.) During his last two months at Hydro Aluminum, Smith worked as a press operator on an assembly line for the Plant's 1,675-ton press. (Smith Dep., p. 138.)

In the early 1990's, prior to working for Hydro Aluminum, Smith was diagnosed with Reiter's Syndrome, a condition similar to arthritis. (Smith Dep., p. 9.) Smith describes his symptoms as varying from day to day, with constant pain and swelling.[7] (*Id.* at

---

[6] Nancy Kovacs is the Human Resources manager at the Plant and has served in that capacity since July 1, 1998. (Kovacs Aff., ¶ 1.)

[7] Smith also states that doctors have told him that he is "not allowed to lift over five pounds" and that he should not stand or sit in one spot for over an hour at a time or climb any ladders. (Smith. Dep., p. 11.) However,

10.)  He states that, on his best day, he can "literally do just
about anything anybody else can do." (*Id*. at 11.)  However, Smith
also describes "flare-up" periods where it is "very, very difficult
for [him] to move, walk, stand." (*Id*. at 13.)  Hydro Aluminum knew
about Smith's Reiter's Syndrome when he was hired in 1998. (*Id*. at
109.)

In late 1999 or early 2000, Smith received an approved medical
leave to allow him to recuperate from Reiter's Syndrome events.
(Comp., p. 3.)  For approximately the next seven years, his medical
leaves were consistently approved by Hydro Aluminum. (*Id*.)  He
does not provide any documentation regarding medical leaves from
1999 through 2005.  He does, however, provide a U.S. Department of
Labor form submitted by his physician, John W. Bulger, M.D. ("Dr.
Bulger"), in August of 2006. (DE #1-3.)  In that form, Dr. Bulger
stated that Smith was "having a significant flare up which
render[d] him very sore and with painful joints." (*Id*. at 1.)  Dr.
Bulger indicated that it would be necessary for Smith to work only
intermittently or to work less than a full schedule for a "probable
duration" of 2-3 months. (*Id*.)  Smith also provides a note from
Dr. Bulger dated February 27, 2007, which states, "Please allow
Mark to use the bathroom as needed due to his Reiter's Syndrome.
Thanks." (DE #1-4.)  There is no indication or allegation that
Smith was denied bathroom use.  In addition, Doug Jesch, a Human

---

Smith does not attach any medical documentation regarding these limitations.

Resources manager at Hydro Aluminum, once told Smith that his disability "would be no problem." (Smith Aff., ¶ 5.) For purposes of this summary judgment motion, Smith is considered a qualified individual with a disability under the ADA.[8]

Hydro Aluminum provides employees with a written Bargaining Unit Attendance Policy ("Attendance Policy"). (Kovacs Aff., ¶ 3; DE #20-2, pp. 6-9.) Smith read, understood, and signed the Attendance Policy. (Smith Dep., pp. 246-47; DE #20-2, p. 11.) The Attendance Policy directs employees to "call in at least, **ONE HOUR PRIOR TO THE BEGINNING OF YOUR SHIFT** each day you will be absent or tardy." (DE #20-2, p. 6; Kovacs Aff., ¶ 4.) (emphasis in original). It is Hydro Aluminum's practice to discharge any employee who fails to show up for three consecutive assigned days without notificaiton. (Kovacs Aff., ¶ 4.) From January 2006 through December 2008, Hydro Aluminum discharged 26 employees because they did not show up for three consecutive days and did not notify Hydro Aluminum of the absences prior to the shifts. (*Id.* at ¶ 6.) Smith is unaware of any employee who missed three consecutive days without calling in and who was allowed to continue working at Hydro Aluminum. (Smith Dep., p. 247.)

In addition to the three day no-call rule, the Attendance Policy states that employees accrue "points" for tardiness, absences, and failure to cover required unscheduled overtime. (DE

---

[8] *See* footnote n.1, supra.

13

#20-2, pp. 7-9.)  The Attendance Policy provides a disciplinary procedure of "2 points - Verbal, 3 points - Written, 5 points - Termination." (*Id.* at p. 9.)  Employees receive one (1) point if notification of absence is not given at least an hour prior to the start of an assigned shift and two (2) points if no notification is given prior to the start of an assigned shift.  (DE #20-2, p. 7.) If an employee accrues five points in a calendar year, his employment will be terminated.  (DE #20-2, pp. 7-9; Kovacs Aff., ¶ 7.)  The Attendance Policy states that "Reoccurring prolonged or excessive infractions . . . will be considered on individual bases without reference to this policy. [C]ertain cases may result in more sever (sic) disciplinary action than provided for by this system." (DE #20-2, p. 6.)  The Attendance Policy further provides that "[Hydro Aluminum] reserves the right to change this Attendance Policy without prior notice to or Consent by the Union." (DE #20-2, p. 9.)

In April of 2007, Smith received an Attendance Disciplinary Action form for accumulating "two (2) points under the current Company Absenteeism Policy." (DE #20-2, p. 13.)  The form also stated that "[f]urther absenteeism will result in additional discipline **up to and including discharge**." (*Id.*) (emphasis added). Smith signed this form.  (*Id.*)

On April 10, 2007, Smith's supervisor, Issac Hunt ("Hunt"), an African American male, told him: "I am removing you from the Press

14

Operator job.  I need someone more dependable.  You can bid on Team Leader or Utility Position under the Second Shift."  (Smith Aff., ¶ 8; Comp., p. 4.)  In his affidavit, Smith states that he told Hunt that he "would be procuring the necessary documentation from my physician, relative to my need to miss work for (sic) as a result of my continuing Reiter's Syndrome disability."  (Smith Aff., ¶8.)  In his deposition, however, Smith states that he simply told Hunt "I'm going home.  I'm calling the doctor, and I will see you probably in a few days, if not tomorrow."  (Smith Dep., p. 197; DE #27, p. 7.)

Smith states that, after this meeting, he called Dr. Bulger and requested documentation for leave until the 18th of April. While Smith alleges that "Dr. Bulger's staff person told me it was sent by FAX to Hydro's Human Resources department on that same day" (Smith Aff., ¶ 9), this statement was stricken as inadmissible hearsay and will not be considered by this Court.  Therefore, there is no evidence suggesting that anyone from Dr. Bulger's office provided the requested information directly to Hydro Aluminum.

Smith subsequently claims that, on the morning of April 11, 2007, he called Hydro Aluminum from a pay phone because his own phone was "out of commission" and left a voicemail message for Nancy Kovacs ("Kovacs"), the Human Resources Director, stating he would be absent.  (Smith Dep., p. 204-05.)

On April 12, 2007, Smith found an anonymous note on his door

that said, "They're trying to fire you for no-calls-no-shows. Make sure you call." (Smith Dep., p. 232; DE #1-4, p. 3.) Smith understood the term "no-call-no show" to mean that he had not shown up to work and had not contacted work about the absences. (Smith Dep., p. 233.) Smith did not call in to Hydro Aluminum on this date. (Smith Dep., pp. 234-36.)

On April 13, 2007, Smith went to Dr. Bulger's office with his live-in girlfriend, Joshlyn Tolson, to obtain the "Certificate to Return to School or Work" that he had previously called to request. (Smith Aff., ¶ 11; DE #1-4, p. 2.) This form states that Smith "is able to return to school or work on April 18, 2007, due to reacurring (sic) Reiter's Syndrome." (DE #1-4, p. 2.) Smith obtained a copy of this form, added a pencil entry of "4-13-07" to it, and dropped it off at Kovacs' office. (Smith Aff., ¶ 11.) However, this was not done until late on Friday, April 13, 2007, when Smith slipped the release under the locked door of Kovacs' office at approximately 6:00 p.m. (Smith Aff., ¶ 11; Smith Dep., pp. 234-35.)

Plaintiff did not work three consecutive assigned shifts on April 11, April 12, and April 13, 2007. (Kovacs Aff., ¶ 10.) Smith admits that, while he was "scared to death" after receiving the anonymous note on his door, he did not contact Hydro Aluminum prior to his assigned shifts on April 12 or April 13, 2007. (Smith Dep., pp. 234-36).

A few days thereafter, Smith received a notice of termination letter from Kovacs dated April 16, 2007. (Smith Aff., ¶ 12; DE #1-5.) The letter references a provision of the Collective Bargaining Agreement which requires prior notice of absences and notes that "seniority shall be terminated" for failure to notify three consecutive working days without providing a satisfactory excuse. (DE #1-5.) Smith does not provide the Collective Bargaining Agreement itself.[9] The letter notes that Smith missed April 11, 12 and 13 and that his employment was terminated effective April 13, 2007. (*Id.*) Smith does not believe that his race was a reason for his discharge. (Smith Dep., p. 260-61.)

ADA Claim

The ADA protects "qualified individuals with a disability" from discrimination in their employment and hiring process. 42 U.S.C. § 12112(a); *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 571-72 (7th Cir. 2001). To establish a violation of the ADA, an employee must show: 1) that he or she is disabled; 2) that he or she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against him or her because of his or her disability or failed to make a reasonable accommodation.

---

[9] Instead, Smith simply attaches the cover page from the Collective Bargaining Agreement to his complaint. (DE #1-6.)

*Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009). While Smith has characterized some of Hydro Aluminum's actions as a "failure to accommodate," the basis of his claim is that he was wrongfully terminated because of his disability and, therefore, Smith has essentially crafted a disparate treatment claim.

A complaining party can demonstrate actionable discrimination by either providing direct evidence of discriminatory motive or intent, or by relying on the indirect method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Direct evidence, such as an admission by a decisionmaker that an adverse employment action was motivated by discriminatory animus, is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption. *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Smith has not provided any such statements or other direct evidence of discriminatory motive or intent and, thus, has opted to rely on the indirect method.

Under the familiar *McDonnell Douglas* framework, in order to establish a *prima facie* case of discrimination under the indirect method of proof, a plaintiff must prove that: 1) he is disabled within the meaning of the ADA; 2) he was meeting Hydro Aluminum's legitimate employment expectations; 3) he suffered an adverse employment action; and 4) similarly situated employees received more favorable treatment. *Mobley v. Allstate Ins. Co.*, 531 F.3d

539, 548 (7th Cir. 2008). Failure to make a *prima facie* leads to an award of summary judgment against a plaintiff. *Id.; Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009); *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007). However, if a plaintiff can successfully demonstrate a *prima facie* case of discrimination, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for its decision to terminate his employment. *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559 (7th Cir. 2007). Once the defendant meets this burden, a plaintiff may attack the proffered reason as a mere pretext for discrimination. *Id*.

Turning first to the *prima facie* case, this Court finds that Smith has not made the necessary showing. Utilizing the traditional fourth prong as stated in *Mobley*, Smith has failed to show that Hydro Aluminum treated similarly situated employees outside of his protected class more favorably. In his Brief in Opposition to Defendant's Motion for Summary Judgment, Smith cites to paragraph 16 of his Affidavit as the only evidence that non-disabled Hydro Aluminum co-workers received more favorable treatment than Smith received. (DE #23, p. 14.) The affidavit states:

> . . . non-disabled Hydro co-workers (including
> but not limited to the aforementioned Mike
> Gasboro) received more favorable treatment
> than I received. Most significantly, on the
> same day of my termination, Mike Gaboro (sic)
> - who had no disabilities being protected

> under the ADA - was promoted to take over my
> employment position.

(DE #24, p. 5; Smith Aff. ¶ 16.)  However, this statement standing alone, does not demonstrate disparate treatment.

To demonstrate such treatment, a plaintiff must provide evidence that a similarly situated employee who is "directly comparable to [the plaintiff] in all material respects" was treated more favorably.  *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008).  The inquiry is not a rigid one, and it asks "only whether the 'members of the comparison group are sufficiently comparable to [the plaintiff] to suggest that [the plaintiff] was singled out for worse treatment.'"  *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007) (*citing Crawford v. Indiana Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006)).  Here, the proper inquiry would be to determine whether Hydro Aluminum treated similarly situated non-disabled employees differently than Smith.  Specifically, whether Hydro Aluminum did not fire non-disabled employees who failed to provide advance notice that they were going to miss their scheduled shifts for three consecutive days.  Smith has not offered any evidence in this regard.  He does not allege that Mike Gasboro failed to call in before any of his scheduled shifts.  In fact, Smith states in his deposition testimony that he was not aware of any individual who did not call in for three days and who was not fired.  (Smith. Dep., p. 247.)  Hydro Aluminum, on the other hand, has provided evidence that twenty-six (26) employees were

terminated for violating this policy.  To establish a *prima facie* case and to defeat summary judgment, more is required from Smith.

Smith also fails to satisfy the modified fourth prong under *Timmons v. General Motors Corp.,* 469 F.3d 1122, 1126-28 (7th Cir. 2006).  This fourth prong requires a showing "that the circumstances surrounding the adverse action indicate that it is more likely than not that [the] disability was the reason for it." *Timmons*, 469 F.3d at 1126.  Often this analysis overlaps with a plaintiff's burden to show pretext after the defendant has provided a legitimate, non-discriminatory reason for the discharge.  For the reasons stated in more detail below, Smith has not provided sufficient evidence to satisfy this modified fourth prong and has failed to establish a *prima facie* case of discrimination.  Thus, his ADA claim fails as a matter of law.


Pretext

Even if Smith had established a *prima facie* case of discrimination, he fails to show that the reason given for the employment action taken by Hydro Aluminum was pretextual.  Under the *McDonnell Douglas* framework, a defendant must offer a legitimate, non-discriminatory reason for its challenged action.  This threshold is a low one.  "The defendant need not persuade the court that it was actually motivated by the proffered reasons . . . .  It is sufficient if the defendant's evidence raises a genuine

issue of fact as to whether it discriminated against the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

Here, in response to Smith's allegation of discrimination, Hydro Aluminum claims it fired Smith because he failed to properly notify Hydro Aluminum in advance that he was going to be absent from his scheduled work shift for three days in a row. Hydro Aluminum offers evidence that it was standard company practice per the Bargaining Unit Attendance Policy ("Attendance Policy") to discharge any employee who failed to work three consecutive days in a row without prior notification. (DE #20-2, pp. 6-9; Kovacs Aff., ¶ 4.) Hydro Aluminum further states that twenty-six (26) employees had been discharged from January 2006 through December 2008 for violating this practice. (Kovacs. Aff. ¶¶ 5, 6.) "It seems self-evident that an employer is acting with a 'legitimate, nondiscriminatory reason' in terminating an employee who simply fails to report to work and does not adequately explain his absence." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir. 1992). As Hydro Aluminum has offered a legitimate, nondiscriminatory reason for Smith's discharge, the burden shifts back to Smith to show that Hydro Aluminum's proffered reason is mere pretext.

"A pretext . . . is a deliberate falsehood." *Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007); *see also*

22

*Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)
("Pretext is more than a mistake on the part of the employer; it is
a phony excuse."). To show pretext, a plaintiff must establish
that the legitimate reasons offered by his employer were not its
true reasons but rather a pretext for discrimination.
*Adelman-Reyes*, 500 F.3d at 666. "Showing pretext requires '[p]roof
that the defendant's explanation is unworthy of credence.'" *Filar
v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1063 (7th Cir.
2008) (*quoting Reeves v. Sanderson Plumbing Products, Inc.*, 530
U.S. 133, 147 (2000)).

To establish such pretext, a plaintiff must show that the
employer's nondiscriminatory reason for discharge was dishonest and
that the true reason was based on discriminatory intent. *Brown v.
Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007)
(*quoting Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007)).
This can be done with either direct or indirect evidence. If the
plaintiff chooses to proceed through indirect evidence, she "must
show that the employer's reason is not credible or that the reason
is factually baseless." *Id.* (*quoting Perez*, 488 F.3d at 777-78).
In addition, the plaintiff must also provide evidence of at least
an inference that the real reason behind the employment action was
discriminatory. *Id.* Courts do not concern themselves with the
wisdom or correctness of an employer's decision; instead they
examine the honesty with which the belief is held. *See Ptasznik v.*

*St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). Courts do not sit as a super-personnel department; the only concern with respect to pretext is the honesty of an employer's explanation. *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003).

Here, Smith has not introduced sufficient evidence to support a finding of pretext. Smith claims that Hydro Aluminum's proffered reason for his discharge is without factual support because Hydro Aluminum had proper advance notice and knowledge of his upcoming absences through: 1) the April 10th meeting with his supervisor, Issac Hunt; 2) a fax sent to Hydro Aluminum by Smith's physician, Dr. Bulger, on April 10th; 3) a voicemail message left by Smith for Kovacs on the morning of April 11th; and 4) a copy of Dr. Bulger's form that Smith slid under the locked door of Kovacs' office on the evening of April 13th. Despite his assertions to the contrary, this evidence does not support Smith's contention that Hydro Aluminum had proper advance notice, that its decision to fire Smith is therefore factually groundless and, more importantly, that the proffered reason for Smith's termination is merely pretextual.

First, Smith asserts that Hydro Aluminum had notice of his upcoming absences because he told Hunt as much in an April 10th meeting. However, the evidence before the Court merely demonstrates that Smith met with Hunt on the 10th to discuss a change in Smith's job assignment and that Smith told Hunt he was "going home" and would return in a few days "if not tomorrow."

(Smith Dep., p. 197; DE #27, p. 7.)  Thus, the record does not reveal that Smith provided Hydro Aluminum with proper notice of his intent to miss work on April 11th - 13th.

Next, Smith contends that Hydro Aluminum knew of his intent to miss work because of a fax message sent to Hydro Aluminum by his physician, Dr. Bulger, on April 10th.  This contention, however, is not supported by admissible evidence.  As evidence that Hydro Aluminum received the fax from his doctor, he claims that Dr. Bulger's employees told him they faxed the letter to Hydro Aluminum.  As stated above in the section regarding the Motion to Strike, these statements are inadmissible hearsay testimony and cannot be used to support Smith's claim.

Additionally, Smith asserts that Hydro Aluminum had notice of his absences because he slid Dr. Bulger's note under the locked office door of Kovacs on the evening of Friday, April 13th.  This statement, even taken as true, does not prove that Hydro Aluminum had advance notice of Smith's absences, which he was required to give.  After the fact notice of an intent to miss work does not equate with giving prior notice of the intent to miss work.

Smith, however, does claim that he called from a payphone and left a voice mail message for Kovacs on the morning of April 11th.  This is the sole piece of admissible evidence that Smith has provided to show Hydro Aluminum had notice of his intended absences and that Hydro Aluminum's proffered reason for his termination is

without factual support. However, Smith's assertion that he called in to work from a payphone on the morning of the 11th is not enough, standing alone, to defeat summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) (holding that an employer would be entitled to judgment as a matter of law if . . . the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred). More to the point, Smith has not provided sufficient factual evidence that the proffered reason for termination was a falsehood or that Hydro Aluminum believed it to be a false reason rather than merely a mistake. *See Ptasznik v. St. Joseph Hospital*, 464 F.3d 691, 696 (7th Cir. 2006) ("An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful.").

In support of his pretext argument, Smith also claims that Hydro Aluminum's proffered reason for the firing is groundless because it violates the applicable Collective Bargaining Agreement ("CBA"). In Smith's termination letter, Hydro Aluminum cites language from the CBA that failure to provide advance notice for three consecutive days of absenteeism prompts termination of seniority. Because the language cited specifies that seniority will be terminated, and not employment, Smith argues that Hydro Aluminum acted *ultra vires* in firing him and that this is further

26

evidence of pretext.  However, "this is not an action for breach of contract."  *Curry v. Pulliam*, 234 F. Supp. 2d 921, 932 (S.D. Ind. 2002).  Whether Hydro Aluminum's decision to fire Smith for no-call-no-show was *ultra vires* and violated the CBA is not at issue here.  Rather, the issue we are to decide is whether Hydro Aluminum's proffered reason for firing Smith is a deliberate falsehood.  *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 560 (7th Cir. 1987).  Again, evidence of mere mistake in a wording provision is not sufficient to demonstrate discriminatory intent.  *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ("pretext means a dishonest explanation, a lie rather than an oddity or an error").[10]

Smith has not shown that it was his disability, and not Hydro Aluminum's mistaken belief that Smith failed to call in, that was the impetus behind the decision to fire Smith.  A mistaken belief that may well be an erroneous basis for discharge, without more, is not a pretext for discrimination and not actionable under the ADA.  *See Pollard v. Rea Magnet Wire Co*., 824 F.2d 557 (7th Cir. 1987).  Smith has presented no admissible evidence to contradict the fact that Hydro Aluminum honestly believed that Smith's attendance actions under the terms of the Attendance Policy were

---

[10]  Furthermore, there is no evidence that termination of seniority is the only appropriate sanction under the CBA.  In fact, the Bargaining Unit Attendance Policy suggests that attendance infractions are indeed terminable. (See DE #20-2, pp. 6-9.)  Finally, in an Attendance Disciplinary Action form signed by Smith, he was warned that "further absenteeism will result in additional discipline up to and including discharge."  (DE #20-2, p. 13.)

unsatisfactory. *See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1013 (7th Cir. 2004) ("[T]he more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held."). As stated above, Smith simply disputes that he failed to give Hydro Aluminum advance notice of his absences through his own deposition testimony, and he offers no other admissible, relevant evidence to refute Hydro Aluminum's contention. Smith's subjective belief regarding the discrimination against him is immaterial and does not prove that Hydro Aluminum's actions were based in any way on a discriminatory animus. *See Horwitz v. Bd. of Edu. Of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 615-16 (7th Cir. 2001) ("[Plaintiff's] subjective belief that the [defendant's] actions were retaliatory and that [defendant's] claimed reasons for terminating her are pretextual in nature does not create a genuine issue of material fact."); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998) ("subjective beliefs of the plaintiff . . . are insufficient to create a genuine issue of material fact.")

In sum, after evaluating all of Smith's arguments, this Court finds no evidence of pretext. Smith has not met his burden of producing specific evidence to call into question the honesty of Hydro Aluminum's beliefs regarding the proffered nondiscriminatory reason for ending Smith's employment. Thus, summary judgment is **GRANTED** in favor of Hydro Aluminum as to Smith's discrimination

claim under the ADA.

Title VII Claim

Smith admitted in his deposition that he does not believe race was a factor in the decision to terminate his employment. (Smith Dep., p. 260-61.) As Smith has not made any additional allegations of discrimination that are actionable under Title VII, Smith cannot make out a claim under Title VII and summary judgment is **GRANTED** in favor of Hydro Aluminum as to this claim as well.

CONCLUSION

For the reasons set forth above, Hydro Aluminum's Motion to Strike is **GRANTED in part and DENIED in part** and the Motion for Summary Judgment is **GRANTED**. Accordingly, the clerk is **ORDERED** to enter judgment in favor of Defendant and close this case.

DATED:  March 30, 2010                   /s/RUDY LOZANO, Judge
                                         **United States District Court**